1

```
 1
 2                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF PUERTO RICO
 3
 4
 5
 6   UNITED STATES OF AMERICA        )
                                     )
 7   vs.                             )   CR 04-414(PG)
                                     )
 8   OMAR SANTIAGO MIRANDA           )
 9
10
11                             SENTENCING
12
13
     held before the HONORABLE SENIOR JUDGE JUAN M. PEREZ GIMENEZ on
14   Friday, July 31, 2009, at 11:30 a.m.
15
16
17
18
19   FOR THE GOVERNMENT:
20   ANTONIO BAZAN, AUSA
21
22   FOR THE DEFENDANT:
23   LYDIA LIZARRIBAR-MASINI, ESQ.
24
25
```

1        (The case was called with the defendant present and being

2   assisted by the official court interpreter.)

3        (The parties are ready to proceed.)

4            THE COURT:  In this matter the Court had denied a

5   request by the defendant to withdraw his plea of guilty.

6            Subsequent to that, the Court ordered a mental

7   evaluation, which was performed and noticed to the Court on

8   August 7, 2008.

9            You do have a copy of that, Counsel?

10           MS. LIZARRIBAR-MASINI:  Yes, Your Honor.

11           THE COURT:  Mr. Bazan, you have a copy?

12           MR. BAZAN:  Yes, Your Honor.

13           MS. LIZARRIBAR-MASINI:  The defendant also has a copy

14   of it, Your Honor.

15           THE COURT:  Okay.  I notice here that in the report,

16   it states that the personnel from the Federal Bureau of Prisons

17   requested that records from Dr. Rafael Padro Castro, which

18   defendant apparently told the personnel that those were his

19   psychological records that could be obtained.  He provided a

20   signed consent form.

21           MS. LIZARRIBAR-MASINI:  That's right.

22           THE COURT:  A signed consent form for the release of

23   said information.  But on the date that the report was prepared

24   and disseminated, that those documents had not been obtained.

25           Counsel, have you been able to obtain subsequent to

1   August 7, 2008, any documentation?

2         MS. LIZARRIBAR-MASINI:  From Dr. Padro, no, Your

3   Honor.  I met with him at his office.  And he did tell me that

4   he would give them to me; however, they have not been made,

5   given to my office at any time.

6         I think that the only way that I can get any documents

7   from him would be through a Court order; because as I said, I

8   have met with him in his office, been there for three hours

9   waiting for him to give me a copy of his file.  And that file

10  has never appeared, according to Dr. Padro.

11        THE COURT:  But do you have any other information that

12  would contradict what was contained in the evaluation?

13        MS. LIZARRIBAR-MASINI:  I don't have any other

14  information, Judge.  However, defendant, Your Honor, has used

15  drugs for years.  In fact, two months ago, he was found at MDC

16  to have used drugs.

17        So throughout time, he has been using drugs.  And one

18  of the facts that we told this Court that had happened at his

19  Change of Plea hearing was that on that day, he had been using

20  drugs.

21        It is sometimes hard to believe that you can find

22  drugs at MDC, Your Honor, but obviously if defendant is there

23  isolated at SHU and he is positive to the use of drugs, we can

24  be certain that those drugs are there at MDC.

25        His use of drugs on the day that we were here for his

1    Change of Plea hindered, Your Honor, I do think that he could

2    make a valid plea on that day.  And that is why we had asked

3    this Court, Your Honor, to give him a trial.

4           He has always stated that he is innocent at all times.

5           On that date we came here to start trial, Your Honor,

6    ready to start a trial, and on that day, in a few minutes a

7    plea was made.

8           The Court knows, because I have filed it, that I

9    didn't go to see him for over a month after that day.

10          The first day I went over to see him, Your Honor, the

11   defendant shouted to me from one corner to another, "Why

12   haven't you been here?  I did not want to plead guilty.  I was

13   forced."

14          Defendant has always claimed, Your Honor, that he is

15   innocent.  And I think that he should be given a trial date

16   instead of being sentenced.

17          As to his drug use, Your Honor, what can I say?  Drugs

18   are at MDC regardless of whether you are in SHU or at your

19   unit.

20          We are at fault, Your Honor.  And I say "we," because

21   I am part of the whole system.

22      (The defendant is raising his hand.)

23          MS. LIZARRIBAR-MASINI:  And I think that he should be

24   given a trial date, Your Honor.

25          THE COURT:  All right.  Well, I've already resolved

1    that issue.

2              MS. LIZARRIBAR-MASINI:  I understand that.

3              THE COURT:  A few months back.

4              MS. LIZARRIBAR-MASINI:  But in the interest of

5    justice, Your Honor, when someone has been adamant that they

6    have been innocent throughout the years -- and we have been

7    here for four or five years in this case.  And on that day that

8    he pled guilty, the facts were such that his plea was not

9    valid, Your Honor --

10             THE COURT:  I already resolved that, Counsel.  A few

11   months ago I determined that the plea was voluntarily and

12   knowledgeably entered and was aware of all the conditions.

13             And if we go through the mental evaluation, at the

14   time that he requested withdrawal of the plea, mention was

15   mentioned to his drug addiction, also the bipolar disorder that

16   supposedly he had been diagnosed at age 14.

17             If we look at this evaluation, and certainly, I think

18   the evaluation does support very clearly the Court's position

19   that his plea was knowledgably and voluntarily entered.  And,

20   therefore, I've already ruled on that.

21             So we'll continue here for the sentence.  That's what

22   we are here for.

23             MS. LIZARRIBAR-MASINI:  Okay.  The question of the

24   Court was if I had any other medical records.

25             I do not have any other medical records.

```
1              THE COURT:  All right.
2         (The defendant lowered his hand.)
3              THE COURT:  All right.
4              MR. BAZAN:  Your Honor, I think it's proper that we
5    should clear up the fact that an Order of this Court was given
6    to the Bureau of Prisons so that Dr. Romey could go interview
7    the defendant and report whatever determination she had.
8              I haven't heard anything.
9              THE COURT:  Carol Romey.
10             MS. LIZARRIBAR-MASINI:  She did go once, Your Honor,
11   to see him.  However, as, again, as we did not have his full
12   medical records --
13             THE COURT:  She went to see him after we received the
14   evaluation from Bureau of Prisons.
15             MS. LIZARRIBAR-MASINI:  Yes, she did, Your Honor.
16             THE COURT:  So she had the evaluation.
17             MS. LIZARRIBAR-MASINI:  She had it.
18             But I did not have records from the other doctors that
19   he had seen, Your Honor.
20             So it was like having some and not having others.  And
21   she couldn't do anything else, Your Honor, except tell me, "I
22   can't do anything right now.  If you get them, call me back."
23             THE COURT:  Apparently, the Bureau of Prisons could do
24   something, even without all the complete records.  And this is
25   very well set forth and plain in the report that your client,
```

1   there is no mental disorder whatsoever.

2          Do you care to state anything else at this time?

3          MR. BAZAN:  Nothing, Your Honor.

4          THE COURT:  Okay.  All right.  Did you read the

5   presentence report?

6          MS. LIZARRIBAR-MASINI:  Yes, Your Honor, I did.

7          THE COURT:  Did you discuss it with your client?

8          MS. LIZARRIBAR-MASINI:  Yes, Your Honor.  We have had

9   it for almost two years now.

10          THE COURT:  All right.  Since 2007.

11          MS. LIZARRIBAR-MASINI:  That is correct.

12          THE COURT:  Dated June 7 -- no, it's dated --

13          MS. LIZARRIBAR-MASINI:  We had filed objections to it,

14   Your Honor.  I do believe, and again I restate to the Court,

15   that this defendant, the use of drugs, he has had for years

16   should be shown in the P.S.R., Your Honor.  Obviously, it has

17   changed and hindered his life and --

18          THE DEFENDANT:  Your Honor, may I approach to you?

19          THE COURT:  Yes.

20          THE DEFENDANT:  Perfect.  In March 6, 2007, I came to

21   change my plea.  I came under pressure.  I wasn't sleeping for

22   a couple of days.  I was using prescription medication that you

23   can find in MDC, under illegal circumstances.  Okay?

24          During that day I got the pressure of my family over

25   here.  It was not intelligently and not voluntarily to sign.

1   Okay?  I've got the pressure of my mother, my family, over

2   here, at that time.  All right?

3        That day -- I've got the transcript over here of that

4   day in which, one, the Court, there is a Plea Agreement.

5        Mrs. Lizarribar said, yes, and it has been filed with

6   the Court in a few minutes ago, Your Honor.

7        That's what she said to you.  Okay?

8        It's 27 years.  How you can study a plea of 27 years

9   in minutes?  We are talking about maybe 10, 20, 25 minutes to

10  study 27 years.

11       I believe that's no time.

12       As a fact, after that day, I did not see my attorney

13  about two-and-a-half months after that.  Inclusive, we got an

14  argument in MDC, because I told her that I made that under

15  influence.  Okay?  And I told her that I want to change that

16  plea because I want to present my innocence in this Court.

17       Okay?  All I want to do is present that I'm innocent

18  in this court.

19       THE COURT:  All right.  Thank you.

20       Counsel, is there anything you would like to state to

21  the Court on behalf of your client before I pronounce sentence?

22       MS. LIZARRIBAR-MASINI:  As to sentence, Your Honor, I

23  would request that the Court sentence him to the lower possible

24  sentence in his case.

25       However, again, Your Honor, I state to the Court that

```
 1    I think the outcome should be trial and not a sentence;
 2    however, the Court has ruled on that.  And I don't have
 3    anything to say as to sentencing, Your Honor.
 4                 THE COURT:  Thank you.
 5                 THE DEFENDANT:  Your Honor?
 6                 THE COURT:  Mr. Santiago, do you care to state
 7    anything before I pronounce sentence?
 8                 THE DEFENDANT:  Yes.
 9                 THE COURT:  Go ahead.
10                 THE DEFENDANT:  I believe this is entrapment, because
11    before I signed this plea, we always got ready to start trial.
12                 That day, that caught me by surprise.  My family, my
13    mother, everybody.  Okay?  I didn't got time to study this.
14    Okay?
15                 Twenty-five minutes, 30 minutes in one of the cells
16    over here, is no time.
17                 Plus that, she came yesterday to MDC Guaynabo and
18    telling me that tomorrow we are going to sentence.
19                 I mean, I'm not prepared for this.  And all I want to
20    show to this Court is that I'm innocent, because I've got proof
21    that I can prove that I'm innocent in this court.
22                 And I believe that I deserve to prove, that not only
23    to me, but to my family that is over here present, and other
24    people here.
25                 THE COURT:  Thank you.
```

1           Anything from the Government?

2           MR. BAZAN:  Your Honor, just to reinstate the Plea

3    Agreement where Government agreed to make a recommendation

4    along with defense counsel of 327 months of imprisonment.

5           That is the agreement of the parties pursuant to the

6    Plea Agreement at paragraph 10, page 5, of the Plea Agreement,

7    it says, "Specific sentence recommendation.  As part of this

8    Plea Agreement, the parties agree to recommend a sentence for

9    Count Five of 324 months of imprisonment."

10          THE DEFENDANT:  Your Honor, can I speak?

11          THE COURT:  Yes, go ahead.

12          THE DEFENDANT:  All right.  I don't want to disrespect

13   over here, nobody.  But if somebody is put in my shoes, do you

14   think you've got enough time to sign that plea in minutes?

15   Because not even an hour, minutes, to study a plea that I'm

16   going to sign my 27 years when I'm innocent, because my family

17   tells me, "If you don't sign that, you're going to get life."

18          My auntie right there, that is almost -- I can say not

19   almost, it's my mother.  She needs me.

20          And all I want to prove is that I'm innocent in this

21   Court.

22          In 27 minutes, 30 minutes, 40 minutes, and it's over

23   here in this paper that the Court gives it to me.

24          A few minutes ago.  It has been filed with the Court

25   in a few minutes ago.

1          In other words, during the two-and-a-half years that I
2   was here, I never received no, but absolutely no plea.  Exactly
3   just when I came that day over here.

4          THE COURT:  Thank you.

5          Let me put some things on record.

6          The report that was prepared after the evaluation of
7   this defendant, it's a very thorough report.  For example, at
8   page 4, the third paragraph --

9          MS. LIZARRIBAR-MASINI:  Of which report, Your Honor?
10  I'm sorry.

11         THE COURT:  July 31st.

12         THE DEFENDANT:  Inclusive, the day that she came,
13  about 4, 6, 7, maybe 8 weeks came to visit me, we got a big
14  argument about that.

15         THE COURT:  It states here.  "Despite his report of
16  excessive Xanax abuse and a history of being diagnosed with
17  bipolar disorder, there is no indication of behavioral and/or
18  irrational dyscontrol.

19         "He does not currently demonstrate or report any signs
20  or symptoms of a major mental illness that would require
21  psychological or psychiatric intervention."

22         Again, on top of page 5.

23         "The defendant has not presented any symptomatology
24  suggestive of a need for psychiatric hospitalization to date."

25         At the second paragraph in the personal assessment

1    part.  He was administered the MMPI-II, which is a test to

2    obtain information regarding self perception and personality.

3    The report goes on to state that the responses provided by the

4    defendant were determined to be of questionable validity, as he

5    appears to have exaggerated symptoms associated with

6    significant physical cognitive disability which is not

7    substantiated by his history.

8         And at the fourth paragraph where it states that he

9    reported high levels of fatigue, exhaustion and headaches, as

10   well as sleep problems, which had been present for many years.

11        It goes to state that while he indicated that he

12   experiences depression, irritability, and that his mood flips

13   easily, he appeared to struggle to define his reported

14   depression in any depth.

15        Irrespective of this, his complaints do not reflect

16   any severe psychological ailments and are more likely to be

17   indicative of his current legal predicament, the length of his

18   pretrial detention and concern over his immediate and long term

19   future.

20        He also was administered the semi-structured interview

21   ECST-R to evaluate his competency, skills, with regard to the

22   present case.  This was done through an interpreter in the

23   Spanish language.

24        And it states at page 6, review of his responses in

25   conjunction with his statements regarding difficult events and

1   decisions made by the judge in his case, he indicated that he

2   possesses reasonable competence in related functional ability

3   in the requisite domains.

4        He demonstrated sound factual understanding of the

5   present criminal proceedings.

6        At page 6, third paragraph, he demonstrated a clear

7   rational understanding of the criminal proceedings, as he

8   questioned the necessity of this evaluation after reviewing the

9   Court's ruling which denied his motion for a Change of Plea.

10       And this was done because of the insistence that he

11   had been diagnosed at age 14 with a bipolar condition,

12   disorder.

13       He also expressed an understanding of the impact of a

14   lengthy prison sentence on his life, as well as the potential

15   for a long imprisonment term as a result of his guilty plea in

16   this case.

17       He did not demonstrate any evidence of emotional

18   dyscontrol, impairment in judgment or symptoms of formal

19   thought disorder which would otherwise impact his ability to

20   rationally understand the present legal case.

21       Throughout the evaluation process, his statements were

22   precise, lucid, and well organized.

23       His recall was appropriate and he provided information

24   in a chronological order that reflect his ability to think

25   rationally and abstractly.

1          Based on this, it appears that he possesses a rational

2     understanding of the legal proceedings.

3          He demonstrated strong interpersonal skills and

4     appeared quite capable of cooperating with others in the

5     pursuit of a common goal.

6          Though he indicated that he disagrees with his

7     attorney, he described her as a very intelligent person that is

8     professional and knows the law.

9          His expectations of her are reasonable, as he

10    indicated he would like her to fight for him and try to prove

11    his innocence.

12         He expressed a belief that they would continue working

13    together, though he stated that their disagreements were

14    common.

15         The diagnosis.  Axis I, anxiolytics.  Xanax

16    dependence.  Cocaine dependence in remission in a controlled

17    environment.

18              Axis II.  Antisocial personality disorder.

19              Axis III.  Refer to medical records.

20              Axis IV.  Legal problems.

21              Axis V.  Current GAF at 75.

22         Based on this assessment, comprehensive clinical

23    interview, and available and review of available records, it

24    appears that Mr. Santiago meets the diagnostic and statistical

25    manual of mental disorders, fourth edition, text revision,

1  criteria for anxiolytic dependence, cocaine dependence, and

2  antisocial personality disorder.

3          While he reported a history of bipolar disorder, he

4  did not manifest any symptoms consistent with this disorder,

5  nor did he report having ever experienced any symptomatology

6  suggestive of past manic episodes.

7          Additionally, he reported a history of illicit

8  substance dependence could easily account for irritability,

9  mood swings, low frustration tolerance reported to have existed

10 in the past.

11         Substance dependence is generally characterized by a

12 constellation of cognitive, behavioral, and psychological

13 symptoms that indicate persistent use of a substance despite

14 significant substance-related problems.

15         The prognosis.  Mr. Santiago Miranda's mental health

16 prognosis is determined to be good.  There is no indication of

17 any significant mental illness that would require psychological

18 or psychiatric intervention at the present time.

19         He has managed to adjust to continued detention

20 without any evidence of significant psychological distress.

21         He appears to possess sufficient coping mechanism

22 necessary to manage current situational stressors.

23         He does not appear to be suffering from any severe

24 mental disease or defect.

25         Emotional complaints are likely to be a subsequence of

1   chronic drug dependence issues.

2        Formal diagnosis of severe mental illness in the

3   absence of any significant period of abstinence from illicit

4   substances is not likely to be of any clinical liability in

5   this case.

6        All his psychological complaints are easily explained

7   as a consequence of his drug dependence history.

8        With regard to competency-related functional

9   abilities, his ability to understand the legal proceedings and

10  to properly assess his counsel, do not appear to be noticeably

11  impaired.

12       The defendant presently appears to be appropriate for

13  continuation of legal proceedings.

14       THE DEFENDANT:  Your Honor, please, another word.

15       All human beings over here in one part of our life, we

16  need some psychological help for different reasons.  Okay?

17       Not only that, everybody commits mistakes in different

18  ways.  Okay?

19       I understand that I deserve an opportunity to prove my

20  innocence.  Okay?

21       Plus, on top of that, that lady over there that used

22  to be my wife, is my baby girl.  Her brother never wanted me

23  alone with her.  Okay?

24       I never dealt with drugs in my life.  Yeah, I used

25  drugs.  But that don't mean that I'm dealing with drugs or got

1    to do something with people, because I came from a very good

2    family.

3            And I am requesting you and this Court the opportunity

4    to prove my innocence.

5            And I know Mr. Bazan over here is a competent person.

6    But sometimes other people try to take advantage to (Spanish).

7            THE INTERPRETER:  To get ahead.  And they want to bury

8    the other person just so they can get ahead.

9            THE COURT:  All right.  On March 6, 2007, Omar Ramon

10   Santiago Miranda pled guilty to Count Five of the Second

11   Superseding Indictment in Criminal 04-414, which charged

12   violation of 21, United States Code, 841A1, 846.

13           The November 1, 2008, edition of the now-advisory

14   United States sentencing guidelines has been used to apply the

15   guideline adjustments pursuant to Guideline 1B1.11A.

16           Based on Guideline 2A1.1, a base offense level of 43

17   is determined, as a victim was killed under circumstances that

18   would constitute murder under 18, United States Code, 1111.

19           There are no other applicable guideline adjustments.

20           Based on a total offense level of 43 and a Criminal

21   History Category of III, the guideline imprisonment range in

22   this particular offense is life imprisonment; a fine range of

23   $25,000 to $4,000,000; plus, a supervised release term of at

24   least five years.

25           Before the Court is a 39-year-old individual who

1    possesses strong family ties, has a prior conviction for

2    attempted murder.

3            Furthermore, the Court notes that the defendant has a

4    history of abuse of controlled substances.

5            The Court has considered the nature and circumstances

6    of the offense and the other sentencing factors set forth in

7    18, United States Code, 3553A.

8            Specifically, the Court will impose a sentence

9    sufficient but not greater than necessary to reflect the

10   seriousness of defendant's actions.

11           Julio?

12      (The Court is speaking with the probation officer.)

13           THE COURT:  Again, specifically, the Court will impose

14   a sentence sufficient but not greater than necessary to reflect

15   the seriousness of the defendant's actions.

16           The Court knows that the defendant has failed to

17   accept responsibility for his actions by attempting to withdraw

18   a valid guilty plea.  And also in the allocution today he is

19   claiming his innocence.

20           The Court also has considered the Plea Agreement and

21   the recommendation made in the Plea Agreement of 324 months.

22           Of course, that was taken in consideration, that the

23   defendant was accepting responsibility.

24           In any event, the Court believes that a sentence of

25   380 months is sufficient but not greater than necessary to

1  reflect the seriousness of the defendant's actions.  And

2  although it's a variance, the Court understands that, as such,

3  it's necessary but not greater than necessary.

4          Therefore, it is the judgment of this Court that the

5  defendant is hereby committed to the custody of Bureau of

6  Prisons to be imprisoned for a term of 380 months.

7          Upon release from confinement, you shall be placed on

8  supervised release for a term of five years to be served under

9  the following conditions.

10          You shall not commit another federal, state, or local

11  crime and observe the standard conditions of supervised release

12  recommended by the sentencing commission adopted by this Court.

13          You shall not unlawfully possess controlled substances

14  and refrain from possessing firearms, destructive devices, and

15  other dangerous weapons.

16          You shall refrain from any unlawful use of a

17  controlled substance and submit to one drug test within 15 days

18  of release; thereafter, submit to random drug testing, not to

19  exceed 104 samples per year, in accordance with the drug

20  aftercare program policy of the U. S. probation office as

21  approved by this Court.

22          If any such samples detect substance abuse, you shall

23  participate in a drug treatment program, whether inpatient or

24  outpatient, in accordance with such policy.

25          You will be required to contribute to the cost of

1  services rendered based on the ability to pay or the

2  availability of third-party payments as approved by this Court.

3         You shall participate in a vocational training and/or

4  job placement program recommended by the probation office.

5         You shall submit to a psychiatric and/or psychological

6  evaluation to determine if any treatment is required, and if

7  so, you will engage in such treatment as arranged and approved

8  by the probation officer until duly discharged.

9         You shall provide the probation officer access to any

10 financial information upon request.

11        You shall submit your person, residence, office or a

12 vehicle to a search conducted by a United States probation

13 officer at a reasonable time and in a reasonable manner, based

14 upon reasonable suspicion of contraband or evidence of a

15 violation of condition of release.

16        Failure to submit to such a search may be grounds for

17 revocation.

18        You shall warn any other residents that the premises

19 may be subject to searches pursuant to this condition.

20        You shall cooperate in the collection of a DNA sample

21 as directed by the U. S. probation officer pursuant to the

22 revised DNA collection requirements in 18, United States Code,

23 3563A9.

24        Having considered your financial condition, a fine is

25 not imposed.

1          A special monetary assessment in the amount of One

2     Hundred Dollars is imposed as required by law.

3          I advise you that you have a statutory right to appeal

4     your conviction and sentence if you believe that your guilty

5     plea was somehow unlawful or involuntarily or if there was some

6     other fundamental detect in the proceedings that was not waived

7     by your guilty plea.

8          You also have a statutory right to appeal the sentence

9     in your case if you feel that the same was imposed in violation

10    of the law as a result of an incorrect application of the

11    sentencing guidelines or that it was unreasonable.

12         Any notice of appeal must be filed here in the

13    district court within ten days after the judgment is entered.

14         If you wish to appeal and cannot pay for the cost of

15    the appeal, you may apply for leave to appeal in forma

16    pauperis.

17         Any remaining counts of the indictment are hereby

18    dismissed as to this defendant.

19         That is the sentence of Court.

20         Anything further, Counsel?

21         MS. LIZARRIBAR-MASINI:  I would ask, Your Honor, that

22    he be given drug addiction programs while being in jail.

23         As we know, he has used drugs and does use drugs

24    presently.

25         And also that he serve his time as close to this

1    island as possible.  Florida would be the best place so his

2    family may see him.  His mother lives there now.  And his three

3    small children live there now, in Florida.

4           THE COURT:  All right.  The Court recommends to the

5    Bureau of Prisons that whatever institution is designated to

6    serve this sentence, that defendant be allowed to participate

7    in any substance abuse treatment program.

8           Also, that he receive any psychological or psychiatric

9    treatment to see if any treatment is necessary, then he should

10   receive the same.

11          And also the Court recommends to the Bureau of Prisons

12   that the institution designated to serve this sentence be

13   located in the State of Florida, if at all possible.

14          Anything else, Counsel?

15          MS. LIZARRIBAR-MASINI:  I don't have any else, Your

16   Honor.

17          THE COURT:  Thank you.  You may withdraw.

18          Court will recess until 1:30 this afternoon.

19          (The hearing was concluded.)

20

21

22

23

24

25

```
 1

 2

 3

 4

 5

 6

 7

 8                        REPORTER'S CERTIFICATE

 9

10

11            I, JOYCE DEL VALLE, Official Court Reporter;
              DO HEREBY CERTIFY that the foregoing transcript
12    is a full, true and correct record of the testimony that was
      taken down by me by machine shorthand and thereafter
13    transcribed by means of computer aided transcription method.
              I FURTHER CERTIFY that I am in no way interested
14    in the outcome of the case mentioned in said caption.

15

         Signed:  S/JOYCE DEL VALLE
16

17

18

19

20

21

22

23

24

25
```